STATE OF UTAH, RESPONDENT, *v.* WILLIAM M. ELLIOTT, APPELLANT.

SALT LAKE CITY—COUNCILMEN — ELECTION — VACANCY — APPOINTMENT.

1. W. Was elected in November, 1893, to the office of councilman in Salt Lake City. He was elected in the same month of the year 1895, each term to commence January 1st, of the year following. After W.'s re-election in 1895, he died, and on December 17th of that year the relator was appointed by the council to fill the vacancy created by W.'s death. On January 2, 1896, the council appointed the defendant to fill the vacancy alleged to exist on that date by reason of W.'s death. *Held*, that whether the election in 1893, under the act of March 10, 1892 (Sess. Laws, p. 28), was valid or not, because of alleged conflict between that and section 309, Comp. Laws Utah 1888, W. would be an officer *de facto*, if not *de jure*, and was entitled to act as a councilman at the time of his death.

2. That section 1744, Comp. Laws Utah 1888, does not apply to Salt Lake City.

3. That W.'s term of office was governed by section 1762, Comp. Laws Utah 1888, fixing the terms of officers for two years, and until their successors are elected and qualified, and that when a vacancy occurs the appointee of the same is entitled to hold,—as his predecessor,—not only until the expiration of the two years, but also until a successor is elected and qualified. The relator was rightfully appointed, and no vacancy existed at the time of defendant's appointment, which was ineffectual and void.

(No. 711. Decided June 5, 1896. **45 P. R.** 346.)

Appeal from the district court, Third district, county of Salt Lake. Hon. John A. Street, *Judge.*

This was a proceeding in mandamus, wherein a complaint was filed by a relator, Benjamin T. Lloyd, against defendant to oust the latter from the office of city councilman to which he had been appointed by the city council. A demurrer was interposed and overruled. A judgment was then rendered upon the demurrer in favor of the relator and an appeal was taken therefrom. *Affirmed.*

*C. S. Varian* and *Moyle, Zane & Costigan,* for appellant.

We contend that on the facts in this case the decision of the question lies wholly with the city council, and not with the courts.

Section 1746, 1 Comp. Laws of 1888, p. 617, is as follows: "The city council shall be the judge of the election and qualification of its own members." The old statutes, sec. 323 of Comp. Laws of 1888, p. 342, is to the same effect.

In *People* v. *Metzger*, 47 Cal. 524, this provision was construed and held to make the city council the sole judges. We adopted this provision with this construction put upon it in California. See also *Mayor* v. *Morgan*, 18 Am.

Dec. 232; *Peabody* v. *School Comm.*, 115 Mass. 383; *State* v. *Harlan*, 15 Oh. St. 114; *Leay* v. *Hunt*, 55 Tex. 545; *Linegar* v. *Littenhouse*, 94 Ill. 208; *State* v. *Dawlan*, 60 Mich. 200, 73 Mich. 252.

Watson was already qualified under his former holding. He did not need to requalify, because his old qualification was good. The holding over of a public officer after the expiration of his term is not for his own benefit, but for the public benefit. *Rightmire* v. *Camden*, 13 Atl. Rep. 30, 50 N. J. Law 43.

The rule should not be invoked to merely keep a man in office who has no real claim to it. Since Watson did not need to requalify *Eddy* v. *Kincaid*, 41 Pac. Rep. 156, it follows that his former term, which would certainly have expired if his successor had been another person and had qualified and died before the new term should begin, expired at the time limited by law. If that is so the council had the right to appoint.

The old city council had no right to make an appointment to fill a vacancy in the new city council. *People ex rel. Sweet* v. *Ward*, 40 Pac. Rep. 538; Mechem Pub. Officers, sec. 133.

Finally, we claim that under the statutes and the express terms of Lloyd's appointment, his term expired upon the appointment of Elliott.

Section 314, 1 Comp. Laws of 1888, p. 340, gave the city council the right to fill a vacancy.

Section 1744, 1 Com. Laws of 1888, p. 617, provided: "If any vacancy shall occur in the office of councilman by death, resignation, removal, or otherwise, such vacancy shall be filled for the unexpired term by appointment of the city council, from the ward in which the vacancy occurs."

This section applies to Salt Lake City as a city of the first class. *People* v. *Page*, 6 Utah 353.

Now, when Watson died the statute gave the right to the then city council to make an appointment to fill his unexpired term, and that only. This unexpired term was from his death, December 14, 1895, to the expiration of his term, January 1, 1896. The statute did not say that the city council could appoint to fill the unexpired term and until his successor was elected and qualified. It gave a term absolutely certain, limited to the unexpired term. Therefore, to this case all decisions cited by the respondent as to officers appointed holding over, where the statutes provide for filling a vacancy until the successor is elected and quilified, are wholly inapplicable. This statute excludes that idea and seems expressly designed to permit an appointment only for the unexpired term, so that the new city council could fill its own vacancy.

The old city council acted in accordance with this theory, for their appointment of Lloyd reads: "For the unexpired term of the late Joseph M. Watson, deceased, and until his successor is appointed and qualified." That city council expressly recognized the right of the new city council to appoint.

Bearing upon the general proposition we cite: *State* v. *Hopkins*, 10 Ohio St. 509; *In re Terms of Judges*, 21 S. E. Rep. 963; *State* v. *Leay*, 64 Mo. 89; *Gold* v. *Fite*, 2 Baxt. 237.

*R. N. Baskin*, for respondent.

The cases of the *People* v. *Hardy*, 8 Utah 68; *People* v. *Osborne*, 4 Pac. Rep. 1074; *People* v. *Lord*, 9 Mich. 227, on a state of facts identically the same as the case at bar, held that there was no vacancy. The following cases support the view taken by the authorities above quoted. *People* v. *Bissell*, 49 Cal. 408; *State* v.

*Howe,* 25 Ohio State 588; *State* v. *Lusk,* 18 Mo. 333; *Commonwealth* v. *Hadley,* 9 Penn. St. 513; *Tuley* v. *State,* 1 Ind. 500; Mechem's Public Offices and Officers, sec. 129; 1 Dillon on Municipal Corporations, sec. 219; Mechem's Public Offices and Officers, p. 257, sec. 397, McCrary Am. Elec. 236–237; *Gosman* v. *State,* 106 Ind. 203; *State* v. *Seay,* 64 Mo. 89, 27 Am. Rep. 206; *Walker* v. *Farrill,* 58 Ga. 512; *Jones* v. *Jefferson,* 66 Texas 576; 1 Dillon Mun. Corp., sec. 219; *State, Stevenson* v. *Smith,* 2 West. (Mo.) 476.

There can be no actual vacancy as long as the rightful occupant continues to hold office, that is, until death, resignation, removal, or some legal disability occurs. Similar language is expressed in the case of *People* v. *Osborne,* 4 Pac. Rep. 1076; and in *State* v. *Harrison,* 3 Am. State Rep. 668 (113 Ind. 234); *People* v. *Tilton,* 37 Cal. 623; *People* v. *Whitman,* 10 Cal. 44.

On the point that the city council under the statute is the judge of the election and qualification of its own members and that its decision in such cases is conclusive and excludes the courts from exercising jurisdiction therein, the attorney for the appellant cites the case of the *People* v. *Metzger,* 47 Cal. 524, as sustaining that doctrine, and asserts that "We adopted this provision with this construction put upon it in California."

At the time the case of the *People* v. *Metzger* was decided the constitution of California then in force did not in terms confer jurisdiction in *quo warranto* cases on the superior courts, but has since in an amendment done so.

The great weight of authority is against the doctrine expressed in *People* v. *Metzger,* 47 Cal. 542, as expressly stated in in *State* v. *Kempf,* 2 Am. State Rep. 753, (69 Wis. 470). In this case numerous authorities are cited in support of said statement. See further upon this question:

1 Dillon on Municipal Corporations, sec. 203, seq. and notes; 4 Dillon on Municipal Corporations, sec. 202 and 204, seq. and notes; McCrary on Am. Law of Elections, 1st Ed. sec. 295, 4th Ed. sec. 345 and notes and cases cited; *Doran* v. *DeLong*, 48 Mich. 552; Mechem's Public Offices and Officers, sec. 214; *State ex rel. Curran & Curran* v. *Palmer*, 24 Wis. 63.

The question of the election and qualification of a member of the city council is not at all involved in this case. The qualification of Lloyd was decided favorably to him by the council in his appointment. The only question involved is: Was there a vacancy to fill when Elliott was appointed, or, in other words had the council any lawful authority to appoint any one to supersede Lloyd? See *State* v. *O'brien*, 25 N. E. Rep. 123 (47 Ohio State 464); *People ex rel. Barton* v. *Londoner*, 22 Pac. Rep. 765; *Commonwealth* v. *Messer*, 44 Pa. State 341; *Simon* v. *Portland Com. Council*, 9 Or. 437; *State* v. *De-Griss*, 27 Texas 242; *Attorney General* v. *Holian*, 29 Mich. 116; *People* v. *Riordan*, 41 N. W. Rep. 482; *People* v. *Gartland*, 42 N. W. Rep. 687; *Commonwealth* v. *Allen*, 70 Pa. St. 465.

BARTCH, J.:

This was a proceeding by information in the nature of *quo warranto*, at the relation of Benjamin T. Lloyd. The information states, substantially, that at the election in November, 1893, one Joseph M. Watson was duly elected to the office of councilman in Salt Lake City, which is a city of the first class, for a term of two years, and until his successor should be elected and qualified; that thereafter, being in all respects eligible to fill the office, said Watson duly qualified, entered upon, and discharged the duties thereof, until his death, which occurred on the 14th day of December, 1895; that previous to his death,

at the election held in November, 1895, he was again elected to the same office for another term of two years, and until his successor should be elected and qualified, the term to commence on the 1st day of January, 1896; that on December 17, 1895, the city council, of which said Watson had been a member, but had not qualified under his election in 1895, appointed the relator to fill the vacancy occasioned by his death; that the relator, who was and is in all respects eligible to fill said office, on December 20, 1895, duly qualified and entered upon the discharge of his duties, and continued in the discharge of the same until and including January 2, 1896, when the said council, against his will, refused to recognize him as councilman, or to allow him to exercise any rights or privileges as such, and thereafter, on January 7, 1896, notwithstanding the fact that the relator was entitled to hold the office, discharge the duties, and enjoy the emoluments thereof until the election and qualification of his successor, ousted him, and unlawfully appointed the defendant in place of the relator; and that the defendant thereupon, and ever since, unlawfully usurped said office, against the will and protest of the relator. Other facts are stated with considerable minuteness, to show that the relator in entitled to hold and exercise the duties of the office, and that the defendant is an intruder and wrongfully withholds the same. The information then concludes with an averment that at the time of the defendant's appointment there was no vacancy, and therefore his appointment was illegal and void, but nevertheless he refused, and still refuses, to surrender the office to the relator, and still continues to wrongfully and illegally hold the same and perform its functions, to the exclusion of the relator, and against his will. Such are the facts appearing from the face of the information, to which the defendant interposed a general

demurrer. This demurrer was overruled, and the defendant failing to answer, and electing to rest on the demurrer, the court entered judgment ousting him, and reinstating the relator to the office.

The principal question raised by the pleadings is whether there was a vacancy in the office at the time of the appointment of the defendant. Counsel for the appellant claim that no election for city officers could have been lawfully held in November, 1893, when Watson was elected, because, as is insisted, that was not the time provided by law; that section 309, Comp. Laws Utah 1888, enacted in January, 1860, fixed the time for holding such elections on the second Monday in February of each even year; that the act of March 10, 1892 (Sess. Laws, p. 28), under which the election in November, 1893, was held, did not apply to Salt Lake City; and that the relator by appointment received no better title to the office that his predecessor had.

In answer to this contention it may be said that even if the election of November, 1893, should be held to have been invalid, it would not necessarily follow that the relator had no title to the office, and we do not deem it material in this case to determine whether or not either the election in 1893 or in 1895 was valid. Watson, whether lawfully elected or not, qualified, entered upon, and discharged the duties of the office from January, 1894, to the time of his death, on the 14th of December, 1895, having been reelected in November, previous. If he had a predecessor, he must have abandoned or yielded the office, for there is nothing to show that Watson's right to hold it was ever disputed. If his election was lawful, then his death created a vacancy; if unlawful, the abandonment or surrender of the office by the previous lawful incumbent created a vacancy, which could be filled by appointment at any time before a person

was lawfully elected thereto and qualified. Therefore, whether Watson filled the office as an officer *de facto* or *de jure* is immaterial, because in either event there was a vacancy when his death occurred; there being no question as to the existence of the office, and no other claimant.

It is also contended by counsel for the appellant that at the time of the appointment of the relator the vacancy could only be filled for the unexpired term, as provided in section 1744, Comp. Laws Utah 1888, and that such term extended only from the time of Watson's death, December 14, 1895, to January 1, 1896. That section is found in the act entitled "An act providing for the incorporation of cities," and does not apply to Salt Lake City. Only those sections of that act which are included in section 1817, Comp. Laws, or are made applicable by express terms, apply to cities of the first class. *People* v. *Page*, 6 Utah 353, 23 Pac. 761. The tenure of elective officers in Salt Lake City in two years, and until their successors are elected and qualified. 1 Comp. Laws Utah 1888, § 1762. The actual length of time, therefore, that such an officer holds his office, depends on when his successor is elected and qualified. So, when a vacancy occurs, and a person is appointed to fill the same, the appointee is entitled to hold the office, not only until the expiration of the two years, but also until a successor is elected and qualified. It follows, therefore, that when a person is elected to office in Salt Lake City, or appointed to fill a vacancy, in either case, after qualifying, he is the lawful incumbent, and entitled to hold the office, as against any other appointee, until, as a result of a lawful election and qualification, a successor appears, or until some legal disability as to the incumbent occurs. This court, in *People* v. *Hardy*, 8 Utah 68, 29 Pac. 1118, speaking through Mr. Justice Miner of the term of an officer, said:

"The right to hold over until the successor is legally elected and qualified is as much a part of his term of office as the regular period subscribed by statute, so that the length of his term depends upon the election of his successor. There can be no actual vacancy as long as the rightful occupant continues to hold office; that is, until death, resignation, removal, or some legal disability occurs." *People* v. *Osborne*, 7 Colo. 605, 4 Pac. 1074; *People* v. *Lord*, 9 Mich. 226; *People* v. *Bissell*, 49 Cal. 407. Whether or not the city council is the judge of the election and qualification of its own members is not involved in this case, the council having passed upon the qualification of the relator by appointing him to fill a vacancy existing in its membership. We are of the opinion that the relator was rightfully appointed to the office in question, and had the right to discharge the duties and receive the emoluments thereof; that when the defendant was appointed no vacancy existed; and that the appointment of the defendant was ineffectual and void. The judgment is affirmed, with costs.

ZANE, C. J., and MINER, J., concur.