Argued January 28, writ allowed February 9, rehearing denied March 9, execution ordered to issue June 15, 1915.

STATE EX REL. *v*. HODGIN.*

(146 Pac. 86; 149 Pac. 530.)

Officers—Tenure—Declared Vacancy.

1. Under Section 1, Article XV, of the Constitution, providing that all officers except members of the legislative assembly shall hold their offices until their successors are elected and qualified, the legislature has no power to declare a vacancy in an office held by virtue of an election.

[As to when appointment to office is complete, see note in Ann. Cas. 1914D, 304.]

District and Prosecuting Attorneys—Tenure—Declared Vacancy.

2. Under Laws of 1913, page 686, providing that there shall be a district attorney for every county, that each district attorney then in office shall become a district attorney for the county in which he resides, and that, where the term of such district attorney expires prior to 1916, there shall be a vacancy which shall be filled by appointment, a district attorney previously elected holds his office by election and not by legislative appointment, and the provision of the act declaring a vacancy before his successor is elected and qualified is invalid.

*The authorities passing upon the purpose and effect of provision that incumbent shall hold his office until his successor is elected and qualified are reviewed in a note in 50 L. R. A. (N. S.) 365.

REPORTER.

**Quo Warranto—Original Proceedings—Notice.**

3. The requirement of Supreme Court Rule 33 that preliminary notice of an original proceeding in *quo warranto* shall be served on the adverse party is waived by respondent's answer to the merits.

**Quo Warranto—Costs—Allowance.**

4. Section 2, Article VII, of the Constitution, declaring that the Supreme Court may in its discretion take original jurisdiction in *mandamus* and *quo warranto*, etc., makes Section 562, L. O. L., providing for the allowance of costs to a successful plaintiff; applicable to an original proceeding in *quo warranto*.

**Quo Warranto—Costs—Objections—Waiver.**

5. Under Section 569, L. O. L., declaring that the losing party must in five days urge his objections to allowance of costs, a defendant in *quo warranto* brought in the Supreme Court must urge his objections to the allowance of costs within that time or they are lost.

**Quo Warranto—Costs—Allowance—Enforcement.**

6. Section 213, L. O. L., declares that a party in whose favor judgment is given which requires the payment of money may have a writ of execution issued for its enforcement. Section 215 declares that the writ shall be issued by the clerk and directed to the sheriff, while Section 216 declares that it may be issued to the sheriff of any county. Section 983 declares that, when jurisdiction is by organic law conferred on any court or judicial officer, all means to carry it into effect are also given. *Held* that, where the Supreme Court had original jurisdiction of a *quo warranto* proceeding, the Code provisions authorizing the issuance of execution warranted the issuance of execution to recover costs.

Original proceedings in Supreme Court.

In Banc.   Statement by MR. JUSTICE BENSON.

This is an original application for *quo warranto* by the State of Oregon, on the relation of F. S. Ivanhoe against John S. Hodgin.

The legislature, at its regular session in 1913, passed an act providing for a district attorney for each county in the state, who should hold office for a term of four years, and until his successor is elected and qualified. The act further provides as follows:

"Each of the district attorneys in office when this act goes into effect shall then become and be the district attorney for that county of his district of which he is then a resident, and shall hold such latter office until the ex-

76 Or.—31

piration of the term for which he was elected, and until his successor is appointed or elected and qualified.''

Section 5 of the same act provides as follows:

''That as soon as this act goes into effect and becomes a law the Governor shall appoint suitable and qualified persons respectively residents of each of such counties in this state in which there is no district attorney resident thereof to serve as district attorney of such county, to hold office until the general election in 1916, or until his successor is elected and qualified, and whenever the term of any district attorney for which he was elected shall expire before the said general election in 1916, such office shall then be vacant and the Governor shall thereupon appoint a suitable and qualified person to fill such vacancy and to hold such office until the said general election in 1916, and until his successor is elected and qualified.''

On November 8, 1910, F. S. Ivanhoe, who was then, and at all the times herein mentioned has been, and now is, a resident of Union County, was elected district attorney for the judicial district composed of the counties of Union and Wallowa, to serve for a term of four years, beginning on the first Monday in January, 1911, and thereafter qualified as such officer and immediately assumed the duties of the office. Ivanhoe continued to act as district attorney for Union County until January 6, 1915, at which time John S. Hodgin, having been appointed to the position by the Governor, pursuant to the act of 1913, assumed the duties of the office. The relator, Ivanhoe, then brings this proceeding in the nature of *quo warranto* in this court, to determine who is the rightful incumbent of the office.

WRIT ALLOWED. REHEARING DENIED.

For the State there was a brief with oral arguments by *Mr. Robert S. Eakin* and *Mr. Thomas H. Crawford.*

For defendant there was a brief with oral arguments by *Mr. James D. Slater* and *Mr. John S. Hodgin.*

MR. JUSTICE BENSON delivered the opinion of the court.

Plaintiff contends that, after the act of 1913 became effective, he still held the office of district attorney for Union County by virtue of his election in 1910, and that Section 1 of Article XV of the Constitution of Oregon prevents the legislature from declaring a vacancy which may be filled by appointment. This section reads:

"All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified."

Defendant contends that the act of 1913, providing for a district attorney for each county, "abolished every then existing judicial district in the state and created new ones, of one county each, so far as the election of district attorneys is concerned." Defendant also contends that, after the act of 1913 became effective, plaintiff held the office, not by virtue of his election in 1910, but by virtue of a legislative appointment.

1. The case has been presented both in the briefs and the oral argument, from various points of view; but we are of opinion that the sole question for determination is this: Did plaintiff, after the act of 1913 became effective, hold the office by virtue of his election in 1910, or did he hold by virtue of a legislative appointment? If he held by virtue of the election, the constitutional provision (Article XV, Section 1), controls, and the legislature had no power to declare a vacancy. In the case of *Stocking* v. *State,* 7 Ind. 326, Mr. Justice STUART says:

"We lay no stress on the declaration of the legislature that there was a vacancy in the office of circuit judge of the new circuit. If there was a vacancy, it existed independent of that declaration. If there was no vacancy, that body could not create one by a declaratory enactment."

This language was quoted with approval by Mr. Justice LORD of this court, in the case of *Cline* v. *Greenwood,* 10 Or. 238, and this view is sustained by the language of Article XV, Section 1, of the Constitution, *supra.*

2. We come, then, to the act of 1913 relating to the office of district attorney, and, after a careful consideration of its several provisions, we are convinced that the legislature never intended to abrogate the office tenure of the district attorneys in office at the time when the act became effective, but merely to reduce the area of each one's district to the county of which he was then a resident. The plaintiff held his office, then, not by virtue of a legislative appointment, but because he had been elected thereto, and since no election of a successor was had in Union County, in November, 1914, there was no vacancy in January, 1915, which the Governor was authorized to fill.

It follows that the judgment must be entered for plaintiff.          WRIT ALLOWED. REHEARING DENIED.

---

Order for execution to issue June 15, 1915.

ON PRAECIPE FOR EXECUTION.

(149 Pac. 530.)

In Banc. Statement by MR. JUSTICE BURNETT.

This was an action at law in the nature of *quo warranto,* commenced in this court, in which a judgment of

ouster was rendered February 9, 1915, excluding the defendant from the office of district attorney for Union County, and charging him with the costs and disbursements of the action, taxed at $60. The plaintiff has filed a praecipe for execution to the sheriff of that county on the money judgment. By direction of the court the parties filed briefs for and against the motion, which have had our consideration.

EXECUTION TO ISSUE.

For the plaintiff there was a brief over the name of *Messrs. Crawford & Eakin.*

For defendant there was a brief submitted by *Mr. John S. Hodgin.*

MR. JUSTICE BURNETT delivered the opinion of the court.

3. The defendant charges that, because no preliminary notice thereof was given, the proceeding was violated *ab initio* of Rule 33 of this court, reading thus:

"No writ of *habeas corpus,* or other writ of original jurisdiction will issue from this court when the applicant has a full, speedy, and adequate remedy in the Circuit Court, except by permission of the court, or a justice thereof, on notice to the adverse party."

In our judgment this objection was waived by the defendant's answering to the merits of the action. In respect to his complaint that the matter could have been heard at his home in Union County before the Circuit Court there, we cannot now indulge in balancing the relative convenience of an initial hearing in the Circuit Court, plus a very probable appeal, as against an original proceeding in the first instance in this court.

4. Article VII, Section 2, of the Constitution of this state, in its amended form, declares:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the Supreme Court may, in its own discretion, take original jurisdiction in *mandamus, quo warranto* and *habeas corpus* proceedings."

It is by virtue of the last clause of this section that this court entertained the prosecution of this action as an original proceeding here. The meaning and effect of that constitutional precept is to ingraft upon the authority of this court the procedure in such cases as defined in the Code to be exercised here in like manner as in the Circuit Court: *Phy* v. *Wright,* 75 Or. 428 (147 Pac. 381). One of the incidents accompanying cases of this kind is the matter of costs as defined in Section 562, L. O. L., where it is said that such charges are allowed, of course, to the plaintiff upon a judgment in his favor in an action provided for in Chapters 4 and 5 of Title V of the Code, which include the very kind of action here under consideration. All the features of the original procedure as defined in the Code passed to this court with the constitutional grant of power to which reference has been made. We conclude that we had authority to render judgment for costs and disbursements in favor of the prevailing party.

5. Some question is made for the first time as to the amount of the items, but the opportunity to urge such opposition is past, because Section 569, L. O. L., says that the losing party must file his objections within five days from the expiration of the time allowed to file the original statement of costs and disbursements. The period thus limited has long since elapsed.

6. Having shown our authority to render the judgment we pass to the consideration of the means of enforcing it.   The following provisions of the Code apply here:

Section 213, L. O. L.:

"The party in whose favor a judgment is given, which requires the payment of money, the delivery of real or personal property, or either of them, may at any time after the entry thereof have a writ of execution issued for its enforcement, as provided in this chapter."

Section 215, L. O. L.:

"The writ of execution shall be issued by the clerk and directed to the sheriff.   It shall contain the name of the court, the names of the parties to the action, and the title thereof; it shall substantially describe the judgment, and if it be for money, shall state the amount actually due thereon, and shall require the sheriff substantially as follows: (1) * * Otherwise, it shall require the sheriff to satisfy the judgment, with interest, out of the personal property of such debtor, and if sufficient personal property cannot be found, then out of the real property belonging to him. * * "

In Section 216, L. O. L., it is said:

"When the execution is against the property of the judgment debtor, it may be issued to the sheriff of any county in this state."

It will be observed that the right to issue execution is not confined to any particular judicial tribunal.   The plain deduction is that any court having authority to render judgment is necessarily vested with power to enforce its decision.   Moreover, it is said in Section 983, L. O. L.:

"When jurisdiction is, by the organic law of this state, or by this Code, or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the

jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.''

This fortifies and more particularly enunciates the principle that the right to enforce its decree is inherent in any court of original jurisdiction. Such power having been vested in this court as to the proceeding named, the authority to enforce the same is necessarily included. The means adapted to that end are pointed out in the Code, and it is not only within the spirit, but also within the letter, of the statute to hold that execution directed to the sheriff of any county in the state is an appropriate exercise of the prerogative of this court in a case of original jurisdiction.

Let the execution issue to the sheriff of Union County, as requested in the praecipe.

EXECUTION TO ISSUE.

---

Motion to dismiss appeal filed May 4, allowed June 15, 1915.