[Civil No. 1956.  Filed March 10, 1922.]

[204 Pac. 1025.]

JOHN L. SWEENEY, Appellant, v. STATE, Appellee.

1. Officers—Constitutional Provision Fixing Term Applies Only to Officers Regularly Elected.—Constitution, article 22, section 13, providing that the term of every officer to be elected or appointed shall extend until his successor shall be elected and shall qualify, has to do exclusively with elective offices, that is to say, offices which are regularly filled by election, and only occasionally by appointment, as on their creation, or on the occurrence of vacancies therein, so that it is unnecessary to construe the provision as though reading, "until their successors shall be elected or appointed," to avoid giving officers who are regularly appointed an indefinite term.

2. Officers—Vacancy can be Created During Hold-over Term Only in Same Ways as During Regular Term.—Under Constitution, article 6, sections 1, 9, article 22, section 13, article 7, section 11, and Civil Code of 1913, paragraph 381, providing for the election and appointment of officers, including justices of the peace, fixing their terms, and providing for the filling of vacancies, the term of an officer who holds over after the expiration of the time for which he was elected or appointed, until his successor shall be elected

2. Death of officer-elect before commencement of term as creating vacancy in office, note, 17 Ann. Cas. 86.

and shall qualify, is, while it lasts, as much a part of his term as the regular term, and a vacancy can occur during such term only in one of the ways in which it can occur during the regular term.

3. JUSTICES OF THE PEACE—APPOINTEE FOR AN UNEXPIRED TERM SUCCEEDS TO HOLD-OVER TERM AS ORIGINAL INCUMBENT WOULD.—Under Civil Code of 1913, paragraphs 179, 221(1), 225, a justice of the peace, appointed to fill a vacancy for the unexpired term, is as much entitled to hold over until the successor is elected and qualified as the original incumbent would have been.

4. OFFICERS—INCUMBENT ELECTED TO SUCCEED HIMSELF CANNOT HOLD OVER AFTER REFUSING TO QUALIFY.—Under Civil Code of 1913, paragraph 221, subdivision 9, making a vacancy when the duly elected officer refuses or neglects to file his official bond within the time prescribed by law, the incumbent of an office who was elected to succeed himself cannot refuse to qualify as his own successor and retain the office under his hold-over term.

5. OFFICERS—STATUTE DECLARING VACANCY IN CONSTITUTIONAL OFFICE ON FAILURE OF SUCCESSOR TO QUALIFY IS UNCONSTITUTIONAL.—Civil Code of 1913, paragraph 221, subdivision 9, declaring a vacancy in an office on the failure of one duly elected thereto to qualify, when applied to an officer not elected to succeed himself, is contrary to Constitution, article 22, section 13, providing that the term shall extend until the successor shall be elected and shall qualify, and is invalid to that extent.

6. JUSTICES OF THE PEACE—APPOINTEE TO FILL VACANCY AFTER REELECTION AND DEATH OF INCUMBENT CAN HOLD OVER FOR NEW TERM.—Where a justice of the peace was elected to succeed himself, but died before the expiration of his former term, so that he could not qualify for the new term, an appointee for his unexpired term became entitled to hold over until his successor should be elected and qualified, which, under the circumstances, would be at the expiration of the next full term.

7. JUSTICES OF THE PEACE—APPOINTEE TO FILL VACANCY NEED NOT QUALIFY AGAIN TO HOLD OVER.—Under Civil Code of 1913, paragraph 225, an appointee to fill an unexpired term as justice of the peace, who had given bond and taken the oath on his appointment, is not required to give a new bond, or take the oath again, to entitle him to hold over after the expiration of the term until his successor is elected and qualified.

6. Term of person elected or appointed to fill vacancy in absence of express statutory or constitutional provision, notes, 12 Ann. Cas. 572; Ann. Cas. 1913D, 619.

APPEAL from a judgment of the Superior Court of the County of Navajo. E. Elmo Bollinger, Judge. Reversed and remanded, with instructions.

Messrs. O'Sullivan & Morgan and Mr. John L. Sweeney, for Appellant.

Mr. Thomas R. Greer, County Attorney, and Mr. Gilbert E. Greer, for the State.

FLANIGAN, J.—This action was brought by information in the nature of *quo warranto* by Thomas R. Greer, county attorney of Navajo county, to oust and exclude the appellant, John L. Sweeney, from the office of justice of the peace of Winslow precinct, in said county, and to obtain adjudication that one Robert B. Walton is entitled thereto. From the pleadings and proof the following facts appear:

One J. F. Mahoney was the duly elected, qualified, and acting justice of the peace of said precinct for the years 1919 and 1920. At the general election held November 2, 1920, Mahoney was re-elected to the office, but after his election, and before December 18, 1920, died without having qualified for the new term. After Mahoney's death one W. A. Parr was appointed to fill the vacancy and qualified, but later resigned. Afterwards, and on December 18, 1920, the appellant, Sweeney, was by the board of supervisors of said county duly appointed to fill the vacancy "for the unexpired term," and immediately filed his oath of office, with bond properly approved. On January 1, 1921, and again on January 3, 1921, the board of supervisors, as then constituted, conceiving a vacancy to exist in the term because of the death of Mahoney and his failure to qualify before January 1, 1921, appointed Walton to fill such vacancy, and he also filed his oath of office with properly approved bond.

The court below gave judgment against Sweeney as prayed for, and adjudged Walton entitled to the office. The case is here on the appeal of Sweeney from such judgment.

The court below rendered judgment upon the facts as stated, holding that the only question for decision thereunder was whether the office was vacant at the time of the appointment and qualification of Walton on January 1, 1921. Appellee challenges in several particulars the sufficiency of the evidence to prove the facts to be as related. The contentions so made, if not foreclosed by the tacit findings of the court, are so far insubstantial that we do not encumber this opinion with their discussion.

As we have remarked, the court below held (and very properly) that the determinative question was whether the office was vacant at the time of Walton's appointment and qualification. The solution of this question depends in turn upon the meaning and construction of the provisions of our constitutional and statutory law governing the case. We therefore preface our discussion with the principal relevant provisions of our Constitution and statutes:

*Constitution:*

"The judicial power of the state shall be vested in a Supreme Court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law." Section 1, art. 6.

"The number of justices of the peace to be elected in incorporated cities and towns, and in precincts, and the powers, duties, and jurisdiction of justices of the peace, shall be provided by law. . . . " Section 9, art. 6.

"There shall be a general election of Representatives in Congress, and of state, county, and precinct officers on the first Tuesday after the first Monday in November of the first even numbered year after the year in which Arizona is admitted to statehood and biennially thereafter." Section 11, art. 7.

"The term of office of every officer to be elected or appointed under this Constitution or the laws of Arizona shall extend until his successor shall be elected and shall qualify." Section 13, art. 22.

"The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." Section 32, art. 2.

*Statutes* (Revised Statutes 1913, Civil Code):

"Whenever a different time is not prescribed by law, the oath of office must be taken, subscribed and filed within ten days after the officer has notice of his appointment, when appointed to fill a vacancy, or if elected, at any time after receiving his certificate of election and at least one day before the commencement of the term of office." Paragraph 179.

"In each justice precinct in each of the several counties in this state there shall be elected by the qualified electors of such precinct, at the general election to be held in the year 1914, and biennially thereafter, one justice of the peace, who shall hold his office for the term of two years from the first day of January following his election, and until his successor is elected and qualified." Paragraph 381.

"221. An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: (1) Death of the incumbent. . . . (3) His resignation, and the lawful acceptance thereof. . . . (9) The failure, refusal, or neglect of the person elected or appointed to such office, to file his official oath or bond within the time prescribed by law, whether such failure, refusal, or neglect shall have been caused by his death or from any other cause." Paragraph 221.

"Any person elected or appointed to fill a vacancy, after filing his official oath and bond, where a bond is required, possesses all the rights and powers and is subject to all the liabilities, duties and obligations of the officer whose vacancy he fills." Paragraph 225.

The conclusions of the lower court were largely based upon the assumption that, as section 13 of article 22 of the Constitution refers to the term of office of every officer to be elected, or appointed, under the

Constitution or the laws of Arizona, therefore, the concluding words "shall extend until his successor shall be elected and shall qualify" should be construed as if reading "until a successor shall be elected *or appointed*, and shall qualify." The court was of the opinion that the section deals with offices both elective and appointive in character. So assuming, it followed, according to the court's reasoning, that an appointive office might be held indefinitely, inasmuch as the incumbent could be superseded only by one elected thereto—an event, on the hypothesis made, impossible. It was to avoid this seeming incongruity that the court construed this section of the Constitution in the manner we have set forth. But it is evident not only that the language of the Constitution is thus virtually amended, but that the necessity for such construction does not exist. The section in question has to do exclusively with elective offices; that is to say, offices which are regularly filled by election, and only occasionally by appointment, as upon their creation or upon the occurrence of vacancies therein by the death, disqualification, forfeiture of office, or the like, of an incumbent.

Appellee's contentions in this court, while based partly on the holding of the lower court just mentioned, are founded substantially upon the proposition that upon the failure of Mahoney to qualify as required by paragraph 179, *supra,* a vacancy occurred in the office under the provisions of paragraph 221, subdivision 9, *supra,* on January 1, 1921, because of such failure, even though caused by Mahoney's death. It must be admitted that the language of the paragraph and subdivision supports the position taken by appellee, and, were these provisions unaffected by others *in pari materia* of controlling force, the judgment of the lower court would have to be sustained.

Reading together sections 1 and 9, article 6, section 13, article 22, and section 11, article 7, of our Constitution, and paragraph 381, *supra,* it will be seen that the office of justice of the peace is provided for by the Constitution, and that the term of office of such justices regularly begins on the first day of January in the odd-numbered years, following the general election to be held in the preceding November, and that such term of office "shall extend until his successor shall be elected and shall qualify" (section 13, art. 22, Const.); that is to say, shall extend beyond the first day of January in the odd-numbered year following the beginning of the term and until the election and qualification of a successor. If the language of the Constitution (section 13, art. 22) is to be given effect according to its terms, of which there can be no doubt (section 32, art. 2), it is plain that one elected to the office of justice of the peace, and who is the lawful incumbent of the office, is entitled to serve therein not only for what we may call his regular, fixed, or normal term of two years, but also for such an additional period following that term as may elapse before the election and qualification of his successor.

The decisions which, under various states of fact, have applied and interpreted similar constitutional and statutory provisions are quite numerous, and where such provisions are not affected or controlled in their full operation by other provisions of law the authorities are unanimous that the additional term, though in its nature contingent and defeasible, is, while it exists, as much a part of the term of the incumbent as is his original, fixed, or regular term. Such incumbent is entitled to hold over after the expiration of his regular term, until the happening of both the events mentioned; i. e., the election of his successor and the qualification of such successor. During the period of the tenure as so extended the office will not

become vacant, unless for causes which would create a vacancy in the fixed and regular term, such as the death, resignation, removal, disqualification, or the like, of the incumbent. See the following authorities: *Meyer* v. *Culver,* 4 Ariz. 145, 35 Pac. 984; *State* v. *Osborne,* 14 Ariz. 185, and cases cited at page 202, 125 Pac. 884, at page 891; *High* v. *State,* 14 Ariz. 429, 130 Pac. 611; *State* v. *Dabbs,* 182 Mo. 359, 81, S. W. 1148; *Kimberlin* v. *State,* 130 Ind. 120, 30 Am. St. Rep. 208, 14 L. R. A. 858, 29 S. E. 773; *Ballantyne* v. *Bower,* 17 Wyo. 356, 17 Ann. Cas. 82, 99 Pac. 869; *State* v. *Elliott,* 13 Utah, 471, 45 Pac. 346; *State* v. *Gormley,* 53 Wash. 543, 102 Pac. 435, 104 Pac. 620; *People* v. *Whitman,* 10 Cal. 38; *State* v. *Fabrick,* 16 N. D. 94, 112 N. W. 74; *State* v. *Speidel,* 62 Ohio St. 156, 56 N. E. 871; *State* v. *Metcalfe,* 80 Ohio St. 244, 88 N. E. 738; *State* v. *Carvey,* 175 Iowa, 344, 154 N. W. 931; *State* v. *Hodgin,* 76 Or. 480, 146 Pac. 86, 149 Pac. 530.

The principles upon which these decisions are based are perhaps in no case more clearly expressed than in *Gosman* v. *State,* 106 Ind. 203, 6 N. E. 349, from which we quote an admirably succinct and complete statement of the rules we have referred to:

"Upon the assumption that no disqualification existed or has intervened, the right of an incumbent who has been duly admitted into an office continues during the prescribed term, and until his successor is elected and qualified. This results necessarily from the constitutional provision last above quoted. The expiration of the prescribed term, the election and qualification of a successor, are the conditions which terminate his right. The election and qualification to the office of clerk gives an absolutely vested right to the office for a term of four years, to which is added a contingent or defeasible right to hold over until the right of a duly elected and qualified successor attaches. Until the concurrence of these events the title of a duly qualified incumbent to the office is complete.

He holds by the same tenure, after the prescribed term, until the right of a duly elected and qualified successor attaches, as before. So long as the defeasible right to hold over continues, and the incumbent exercises it, the same conditions which would create a vacancy during the prescribed term will be required to create one during the time which he is lawfully holding over. As a consequence, it must result that if no contingency has intervened to disqualify an incumbent from holding the office, or cut off his defeasible title, no vacancy has occurred merely because his prescribed term has expired, if in the meantime the right of his successor has not attached. In such a case the body with whom the power to fill vacancies is lodged, has no function to perform. The office is lawfully occupied by a qualified incumbent, whose title has not been defeated. It is not vacant.''

Under the constitutional and statutory provisions we have referred to, it is therefore evident that, had Mahoney lived and had another been elected to succeed him, he would have been entitled to hold the office of justice of the peace of Winslow precinct until that successor had qualified in the manner provided by law. If the successor so elected had failed to qualify as required by paragraph 179, Civil Code, *supra,* Mahoney would have held over according to the mandatory terms of the constitutional provision until a successor had been elected and had qualified. But, upon Mahoney's death during his term and before the election and qualification of his successor, the office became vacant in law, as well as in fact. Paragraph 221, subd. 1, *supra.* The vacancy thus existing was filled by the appointment and qualification of Parr, and another vacancy resulted upon his resignation. Paragraph 221, subd. 3, *supra.* This vacancy was filled by the appointment and qualification of the appellant, Sweeney, on December 18, 1920. What, then, were Sweeney's rights to the unexpired term? The answer to that question, given without dissent

by all the authorities which have spoken on the question, and by the statute (paragraph 225, Civ. Code, *supra*), is that by the appointment and qualification of Sweeney he succeeded to the unexpired term, including the capacity, power, and right to hold over possessed by his predecessors Mahoney and Parr. *Sheen* v. *Hughes*, 4 Ariz. 337, 40 Pac. 679; *People* v. *Hardy*, 8 Utah, 68, 29 Pac. 1118; *State* v. *Metcalfe*, *supra*; *State* v. *Elliott*, *supra*; *People* v. *Lord*, 9 Mich. 227; *State* v. *Speidel*, *supra*; *State* v. *Carvey*, *supra*.

Such being the extent of the power and capacity of Sweeney in and to the term as successor to Mahoney, our next inquiry, and the decisive legal issue in the case, is: Did the office of justice of the peace of Winslow precinct become vacant on January 1, 1921, because of the failure of Mahoney to qualify, even though Mahoney's failure to do so was caused by his death? Paragraph 221, subd. 9, *supra*. Paragraph 221 was formerly paragraph 265 of the Revised Statutes of 1901, which latter paragraph was amended by chapter 25, Laws Regular Session of 1912, and brought forward into the Code of 1913 in its present form as paragraph 221. Before that amendment subdivision 9 read as follows:

"9. His refusal or neglect to file his official oath or bond within the time prescribed."

Referring, as such subdivision did, to the acts of qualification required of an incumbent, as such, during his term, that subdivision was effective to create a vacancy in the office of an incumbent elected to succeed himself, upon his failure to qualify, had he lived to do so. This construction of a similar statute was made in *State* v. *Gormley*, *supra*; the court saying of an incumbent elected to succeed himself:

"He cannot decline to qualify, and continue in office under his former tenure. One in this situation must hold under his new term or not at all. The term of

office will not expire until the successor, though it be himself, is elected and qualified under the decision in the Tallman case, but, unless he qualifies under his new tenure he forfeits the right to hold under either.''

And there is no reason why it should not be held that paragraph 221, subdivision 9, is a lawful and constitutional provision, so far as it requires the incumbent re-elected to an office to qualify as prescribed by law for the new term, or suffer the loss of the office.

But it is manifest that to provide what shall constitute the steps necessary to qualify one to hold an office is one thing, and to declare a vacancy to exist in the term of an incumbent who has complied with that law, is quite another. Subdivision 9 of paragraph 221 is not limited to the acts required of an elected incumbent alone, but undertakes to prescribe that a vacancy shall exist in an office upon the failure of one elected thereto to qualify within the prescribed time, notwithstanding the office may then be in the possession of a lawfully qualified incumbent, who, under the Constitution, is entitled to hold until a successor is elected and qualified. It has been shown that the effect of the constitutional provision that the term of office of every elective officer shall extend until his successor is elected and qualified is to make a vacancy impossible after the expiration of the regular term and pending the election and qualification of a successor, unless for causes and conditions which would create a vacancy in the fixed term, and which are therefore effective to create a vacancy in the office during the contingent extension of the term, without distinction between the regular term and its extension in such respect. This result—that is to say, the avoidance of a vacancy by the continuing of the lawful incumbent in the office—is not merely accidental to the operation of the constitutional provisions, but was the very object sought to be attained thereby. *State* v. *Fabrick, supra; People* v. *Tilton,* 37 Cal. 614; *State*

v. *Harrison,* 113 Ind. 434, 3 Am. St. Rep. 663, 16
N. E. 384; *People* v. *Hardy, supra.* It therefore in-
contestably follows that, as the effect and purpose of
subdivision 9, paragraph 221, is to create a vacancy
under circumstances where the Constitution expressly
declares no vacancy shall exist, the statute is to that
extent repugnant to the terms of the Constitution and
is void.

We have proceeded upon the assumption that
Sweeney's rights to the office are those he would
have, were another than Mahoney to have been
elected thereto, who failed to qualify. It is clear
that such rights cannot be affected by the fact
that Mahoney's death, which caused the vacancy in
the office filled by the appointments of Parr and
Sweeney, happened also to render the qualification of
Mahoney as the elected successor an impossibility.
Appellant's right is to the office and the term as such,
and having been appointed to fill an actual vacancy
recognized by law, and having done all that was law-
fully required of him to qualify under such appoint-
ment, he is entitled to serve by virtue of the consti-
tutional provisions until his successor is both elected
and qualified.

Holding by this tenure, and having qualified by
taking the oath of office and giving the required bond,
he was not required to qualify anew, or to give any
further or additional bond, unless by order of the
board of supervisors, in accordance with the provi-
sions of paragraphs 202 and 203 of the Civil Code.
No such order having been made, the bond given was
sufficient. Paragraph 225, *supra.* The case is thus
plainly distinguished in this feature from *State* v.
*Gormley* and *State* v. *Carvey, supra,* cited by appel-
lee, where the statutes required the renewal of a bond
already given or the furnishing of a new bond. Here

Sweeney had done all that any law required him to do to qualify him to hold for the term, and under express and mandatory provision of law is authorized to hold until the election and qualification of his successor.

It is to be noted that paragraph 221, subdivision 9, does not prescribe the acts necessary to qualify for office. For these requirements we must look to other provisions of law. Paragraph 221 undertakes to declare, properly in part, and in part improperly, what shall be the result of the failure of an elected officer to qualify, and our holding is simply that in so far as the subdivision undertakes to create a vacancy, where the express terms of the Constitution declare no vacancy shall exist, that the legislation cannot be given effect. These observations are made to point out that the conclusions we have announced in no wise imply an abridgement of the power of the law-making body, acting within constitutional limitations, to legislate in the fullest manner concerning the method of electing public officers and prescribing their qualifications.

Briefly summarizing: Upon Mahoney's death a vacancy occurred, which was duly filled by the appointment and qualification of Parr; upon the latter's resignation, another vacancy resulted, which was filled by the appointment and qualification of appellant, Sweeney, who succeeded thereby to the unexpired term, with the power and capacity to hold over until the election and qualification of his successor; holding by such constitutional tenure, the office did not and could not become vacant upon the failure of Mahoney to qualify, and the attempted appointment and qualification of Walton was therefore a nullity, and Sweeney is entitled to the office in accordance with the mandatory terms of the Constitution.

For these reasons, the judgment must be reversed and the cause remanded, with instructions to the lower court to proceed in a manner not inconsistent herewith.

ROSS, C. J., and McALISTER, J., concur.